Plaintiff's bare-bones allegations do not raise a plausible inference that Landry and Taylor violated his right to a fair trial. It is not enough that Plaintiff alleges these officers submitted false evidence to the New York County District Attorney's Office (FAC ¶¶ 27–28), because he is silent about what evidence they submitted, when, or to whom, and he does not explain what effect this purported false evidence would have had on a jury. His allegations therefore fail to set forth a factual basis from which a reasonable fact finder could conclude that the purported false evidence was likely to influence a jury, *see Jovanovic*, 486 F. App'x at 152, or that the evidence was a cause of his confinement, *see Id.*; *Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Accordingly, his first cause of action is dismissed.

2. Malicious Abuse of Process

Plaintiff next asserts that the Individual Defendants abused their arrest and investigation powers. To make out a § 1983 claim for malicious abuse of process, a plaintiff must allege that the defendant "'(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'" *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). The pleadings do not address the second and third elements of this cause of action. Plaintiff alleges no facts with respect to the Individual Defendants' intent, and he offers no explanation as to what collateral objective they sought.[4] Therefore, his claim for malicious abuse of process is dismissed.

---

[4] Plaintiff argues that the Individual Defendants arrested Plaintiff with the collateral objective of covering up his arrest. Setting to the side that making an arrest in order to cover up the very same arrest is a nonsensical objective, the objective is not collateral to the process employed. It therefore fails to satisfy the third factor of the *Savino* test. 331 F.3d at 76.

### 3. Failure to Intervene

Plaintiff's third cause of action asserts that the Individual Defendants failed to stop violations of Plaintiff's constitutional rights. Although the law is clear that police officers have "an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in [their] presence by other officers," *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988), Plaintiff has failed to make out a claim on that basis.

As a preliminary matter, the Court notes that it has dismissed Plaintiff's claims for constitutional violations. As a result, Plaintiff has alleged no violations in which the Individual Defendants could have intervened.

Moreover, even if Plaintiff had sufficiently alleged underlying constitutional violations, he has not alleged facts that support a claim for failure to intervene in those violations. Plaintiff asserts that the Individual Defendants were all present at the stop, search, and arrest of Plaintiff (FAC ¶ 15), but he does not say what they *did*. Instead, he repeatedly makes the bare allegation that all of the Individual Defendants "lacked either reasonable suspicion or probable cause." (*Id.* ¶¶ 16, 20, 24.) This restatement of the legal standard for stops and searches does not sufficiently allege constitutional violations in which the Individual Defendants might have intervened. Where were the officers in relation to Plaintiff and in relation to each other? What impermissible actions did they take? Which officers observed those actions? Plaintiff does not say. Accordingly, he fails to nudge his failure to intervene claim from possible to plausible.

Plaintiff also alleges that the Individual Defendants "had an opportunity to intervene in the submission of false evidence" to the grand jury, but that they failed to do so. (*Id.* ¶ 31.) This allegation also lacks the specificity required to withstand a motion to dismiss. Plaintiff does not differentiate among the Individual Defendants and fails to explain whether any of them was in

another's presence at the time of the submission of false evidence or what could have or should have been done to stop the submission.

Because Plaintiff has alleged no underlying constitutional violations and because he has not pleaded facts that give rise to a plausible inference that the Individual Defendants could have intervened anyway, he fails to state a claim for failure to intervene.

### 4. Violation of the Equal Protection Clause

Plaintiff also claims that the Individual Defendants discriminated against him on the basis of his race. His only support for this claim is the bare statement that "individuals who are not Black are not, *inter alia*, stopped, assaulted, searched and testified falsely against." (*Id.* ¶ 57.) To make out an Equal Protection claim on the basis of selective treatment by the government, a plaintiff must allege that he was "[(1)] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen Assoc. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (internal citations and quotation marks omitted).

Plaintiff does not set out an adequate factual basis from which a plausible inference of racial discrimination can be made. With regard to the first element, Plaintiff's statement about disparate treatment is wholly conclusory. He offers no factual basis – no statistics or studies or stories – from which a reasonable fact finder could infer that he was treated differently than other similarly situated people. With respect to impermissible considerations, Plaintiff implies that race motivated the alleged disparate treatment because non-black individuals "are not . . . stopped, assaulted, searched, and testified falsely against." (Compl. ¶ 57.) This is both

8

conclusory and wholly generic. Because Plaintiff has pleaded neither element of an equal protection claim, that claim is dismissed.

### 5. Supervisory Liability

In his next cause of action, Plaintiff alleges that Defendant Pepperman is liable for the constitutional violations of his subordinates. At the outset, the Court notes once again that it has already dismissed Plaintiff's claims for constitutional violations by Pepperman's subordinates. Therefore, Plaintiff sets forth no violations that Pepperman failed – or could have failed – to prevent in his supervisory role.

Nevertheless, even if the other Individual Defendants *had* violated Plaintiff's constitutional rights, Plaintiff fails to allege facts from which the Court could plausibly infer that Pepperman is derivatively liable as their supervisor. "In a § 1983 suit . . . the term 'supervisory liability' is a misnomer. [E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Plaintiff states that Defendant Pepperman "supervised" and "approved" Plaintiff's arrest and the submission of false evidence (FAC ¶¶ 17, 22, 32), but he does not allege facts that show Pepperman supervising or approving anything, nor does he allege that Pepperman instigated or directly participated in constitutional violations. Accordingly, Plaintiff's claim against him is dismissed.

### 6. Municipal Liability

Plaintiff's final cause of action states that the City of New York is liable to Plaintiff for constitutional violations caused by the City's "policies, customs, and practices." (*Id.* ¶ 68.) To "impose liability on local governments under § 1983[, a plaintiff] must prove that [an] action pursuant to official municipal policy caused [his] injury." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (citations and quotation marks omitted). Moreover, "the plaintiff must

9

establish a causal connection . . . between the policy and the deprivation of his constitutional rights." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985).

An official policy or custom can be pleaded in a number of ways. A plaintiff may allege behavior that is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." *Davis v. City of New York*, 228 F. Supp. 2d 327, 337 (S.D.N.Y. 2002) (quoting *Silva v. Worden*, 130 F.3d 26, 31 (1st Cir. 1997)). Here, Plaintiff alleges that a "*de facto* quota policy" and a "*de facto* overtime policy" encouraged unlawful stops, searches, and arrests, as well as the fabrication of evidence. (FAC ¶¶ 70–71.) However, he does not allege what these policies entailed or how they caused the sorts of injuries of which Plaintiff complains, nor does he explain how many officers abided by that policy or for how long they did so. He insists only that there is a policy, which is insufficient to carry his claim. *See Twombly*, 550 U.S. at 555.

As an alternative means of showing a municipal policy, a plaintiff may plead that the municipality failed to discipline employees or agents who violate civil rights. *See Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[T]he persistent failure to discipline . . . [can] give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct . . . ."). In this vein, Plaintiff alleges that the City was "aware" that the Individual Defendants "routinely committed constitutional violations" but that the City "failed to change its policies, practices, and customs to stop this behavior." (FAC ¶ 72.) However, Plaintiff does not address what constitutional violations were being committed, when, against whom, or by which of the Individual Defendants. Once again, his regurgitation of the legal standard for inferring a municipal policy or custom does not satisfy his burden. *See Twombly*, 550 U.S. at 555.

10

Even if, *arguendo*, Plaintiff alleged facts sufficient to give rise to a plausible inference of a policy or custom of the City, to succeed on his claim for municipal liability, he must also plead facts that would show that the policy is causally connected to a deprivation of his constitutional rights. Here, too, Plaintiff falls short. As discussed above, the FAC fails to state a claim for any violation of Plaintiff's constitutional rights. Accordingly, Plaintiff has not alleged an underlying violation on which municipal liability could be grounded. For this reason and because he has failed to allege a municipal policy or custom, Plaintiff's claim for municipal liability is dismissed.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted as to all claims and all Defendants. Accordingly, IT IS HEREBY ORDERED THAT the First Amended Complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. No. 15 and to close this case.

SO ORDERED.

Dated: July 8, 2013
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

\*   \*   \*

Plaintiff is represented by Gregory Paul Mouton, Jr., Law Office of Gregory P. Mouton, Jr., 244 Fifth Avenue, Suite G247, New York, New York 10001, and Verena Celestene Powell, Powell Law, P.C., 277 Broadway, Ninth Floor, New York, New York, 10007.

Defendants are represented by Liza Jin Kyung Sohn, New York City Law Department, 100 Church Street, New York, New York 10007.